J-S66014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ALLAN LESLIE SINANAN JR. | : | |
| | : | |
| Appellant | : | No. 578 EDA 2018 |

Appeal from the Judgment of Sentence September 22, 2017
In the Court of Common Pleas of Northampton County
Criminal Division at No(s):  CP-48-CR-0000169-2017,
CP-48-CR-0004301-2016

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JANUARY 23, 2019**

Appellant, Allan Leslie Sinanan, Jr., appeals from the judgment of sentence entered in the Northampton County Court of Common Pleas, after his jury trial convictions on eight counts each of possession of a controlled substance and possession with intent to deliver ("PWID"), three counts of criminal use of a communication facility, and one count of possession of drug paraphernalia.[1]  We affirm.

In its opinions, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no need to restate them.

---

[1] 35 P.S. §§ 780-113(a)(16), (30); 18 Pa.C.S.A. § 7512(a); 35 P.S. § 780-113(a)(32), respectively.

Appellant raises the following issues for our review:

WHETHER UNDER THE UNEMPLOYED PROCEDURES NECESSARY, THE EXCLUSIONARY RULES, AS WELL AS, IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION[S] 8 AND 9 OF THE PENNSYLVANIA CONSTITUTION:

1) DID THE TRIAL COURT [ERR] IN FAILING TO SUPPRESS ALLEGED CONTRABAND FOUND ON APPELLANT'S PERSON AT THE PALMER TOWNSHIP POLICE STATION ON NOVEMBER 4, 2016, WHERE POLICE SUBJECTED APPELLANT TO A SEIZURE BASED SOLELY ON THREE (3) ALLEGED CONTROLLED PURCHASES FROM THE MONTH OF AUGUST 2016, WHERE WITHOUT REASONABLE SUSPICION OR PROBABLE CAUSE TO ARREST, POLICE TOOK APPELLANT INTO CUSTODY, TRANSPORTED APPELLANT TO THE POLICE STATION TO SEARCH AND DETAIN THERE FOR INTERROGATION?

2) DID THE TRIAL COURT [ERR] IN FAILING TO SUPPRESS THE SEARCH WARRANT, WHERE THE TAINTED EVIDENCE ALLEGEDLY FOUND ON APPELLANT'S PERSON AT THE POLICE STATION WAS ADDED TO VALIDATE THE APPLICATION FOR THE SEARCH WARRANT?

3) DID THE TRIAL COURT [ERR] IN FAILING TO SUPPRESS THE SEARCH WARRANT ISSUED WITHOUT PROBABLE CAUSE ON NOVEMBER 4, 2016, WHERE THERE IS AN APPRECIABLE DELAY OF APPROXIMATELY SIXTY-FIVE (65) DAYS, AFTER THE ALLEGED THIRD CONTROLLED PURCHASE, IN THE MONTH OF AUGUST 2016, AND THE TIME THE SEARCH WARRANT ISSUED, ON NOVEMBER 4, 2016, FOR THIS DELAY IS ABSENT OF ANY CONTINUED CRIMINAL ACTIVITY?

4) DID THE TRIAL COURT [ERR] IN FAILING TO SUPPRESS THE SEARCH WARRANT ISSUED WITHOUT PROBABLE CAUSE ON NOVEMBER 4, 2016, PURSUANT TO A LACK OF SUBSTANTIAL NEXUS BETWEEN THE ALLEGED THREE (3) CONTROLLED PURCHASES IN THE MONTH OF AUGUST 2016 AND THE PREMISES TO BE SEARCHED; WHERE THE POLICE FAILED TO ESTABLISH THAT CONTRABAND WAS KEPT IN

THE PROPERTIES; WHERE THE VERACITY, RELIABILITY, AND THE BASIS OF THE C.I.'S KNOWLEDGE WITH CORROBORATION AND VERIFICATION HAS NOT BEEN ESTABLISHED; AND WHERE THE POLICE OFFICERS' OBSERVATIONS IN THE MONTH OF AUGUST 2016 AND NOVEMBER 4, 2016, DID NOT SEE THE EXCHANGE OF PRE-RECORDED U.S. CURRENCY OR DRUG TRAFFICKING?

(Appellant's Brief at 5-6).

Our standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa.Super. 2012), *appeal denied*, 618 Pa. 684, 57 A.3d 68 (2012).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Stephen G. Baratta, we conclude Appellant's issues merit no relief. The trial court opinions

comprehensively discuss and properly dispose of the questions presented. (*See* Amended Pa.R.A.P. 1925(a) Opinion, filed June 1, 2018, at 1-2) (finding: **(1)** Appellant provided no credible legal support for theory that search incident to his arrest was unconstitutional; search incident to arrest is exception to warrant requirement). (*See* Rule 1925(a) Opinion, filed March 29, 2018, at 2) (finding: court's January 29, 2018 order denying Appellant's post-sentence motions fully addressed Appellant's claims in his Rule 1925(b) statement). (*See* Order Denying Post-Sentence Motions, filed January 29, 2018, at 13-20) (finding: **(1)** police suspected Appellant trafficked cocaine, and subsequently initiated investigation, began surveillance, and conducted three controlled buys from Appellant on August 3, 2016, August 17, 2016, and August 31, 2016; officers observed Appellant sell cocaine to confidential informant during each controlled buy; based on information gathered during subsequent investigation, police arrested Appellant outside his home on November 4, 2016; facts and circumstances of controlled buys supplied police with probable cause to conduct warrantless arrest of Appellant; **(2)** based on totality of circumstances and information contained within four corners of search warrant, magistrate had sufficient probable cause to issue search warrant; **(3-4)** Appellant's complaint that information contained "stale" information is negated by fact that on day of arrest, police recovered drugs on his person during valid search incident to arrest; search warrant included information about controlled buys and drugs recovered from Appellant's

person during search incident to arrest on November 4, 2016; three vials recovered on Appellant's person on date of arrest were same type of vials used during controlled buys; thus, facts in affidavit provided magistrate sufficient information to determine Appellant had continued his criminal conduct from time of controlled buys to date of arrest; three controlled buys and drugs found on Appellant's person gave magistrate sufficient probable cause to issue search warrant for Appellant's residence; police properly executed warrantless arrest, and evidence obtained following arrest was not subject to suppression). The record supports the trial court's rationale. Accordingly, we affirm on the basis of the trial court opinions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/19



IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION



| | | | |
|---|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) | No. | 4301-2016 |
| | ) | | 169-2017 |
| vs. | ) | | |
| | ) | | |
| ALLAN LESLIE SINANAN, JR., | ) | | |
| | ) | | |
| Defendant. | ) | | |

**COPY**

## ORDER OF COURT

**AND NOW**, this 29th day of January, 2018, Defendant Allan Leslie Sinanan, Jr., having

filed a Post Sentence Motion in Arrest of Judgment on September 27, 2017, as well as numerous

Supplemental and Additional Post Sentence Motions, it is hereby **ORDERED** that Defendant's

Post Sentence Motion, with all its supplementation, is **DENIED.**

## STATEMENT OF REASONS

### Factual Background and Procedural History

The instant matter before the Court involves two (2) Criminal Informations which were

consolidated for purposes of trial: Docket Nos. 4301-2016 and 169-2017. A jury trial was held

on September 5, 2017 through September 7, 2017.

At the outset, we note that this matter has been procedurally problematic. The Defendant

has had a difficult relationship with all of his court-appointed attorneys, apparently fueled by his

distrust of each attorney appointed to represent him, his desire to control all aspects of this case

and his lack of legal training, knowledge, and understanding of both criminal procedure and

applicable law.

We also note that since the Defendant's arrest, he has inundated the Clerk's Office with

letters and motions. On the face, the Defendant's communications are well written. All of

Defendant's pro-se letters and filings are neatly handwritten in ink, with very legible script. His

1

command of the English language is above average, in that his sentence structure demonstrates that he is both educated and intelligent. On the other hand, his command of legal concepts, his understanding of case law, and his legal theories presented are logically flawed and, at other times, difficult to understand.

Docket No. 4301-2016, filed on November 4, 2016 by the Palmer Township Police Department, charged the Defendant with three (3) counts of Possession of Controlled Substance with Intent to Deliver (F) 35 § 780-113 §§A30; three (3) counts of Possession of a Controlled Substance (M) 35 § 780-113 §§A16; and three (3) counts of Criminal Use of a Communication Facility (F3) 18 § 7512 §§A.

Docket No. 169-2017, filed on December 27, 2016 by the Palmer Township Police Department, charged the Defendant with five (5) counts of Possession of Controlled Substance with Intent to Deliver (F) 35 § 780-113 §§A30; five (5) counts of Possession of a Controlled Substance (M) 35 § 780-113 §§A16; one (1) count of Possession of Drug Paraphernalia (M) 35 § 780-113 §§A32; and one (1) count of Possession of a Firearm Prohibited (F2) 18 § 6105 §§A1.[1]

On or about January 10, 2017, Rory Driscole, Esq. was appointed to represent the Defendant in both cases. Mr. Driscole is a seasoned, well-respected public defender. The Defendant immediately clashed with Mr. Driscole and requested his removal. Following a hearing on a Motion to Withdraw on or about March 24, 2017, Attorney Driscole was permitted to withdraw and Conflicts Counsel, Alexander J. Karam, Esq. was appointed to represent the Defendant on April 5, 2017. Mr. Karam is another seasoned attorney. An Omnibus Pretrial Motion was filed on May 17, 2017 and a suppression hearing was held before the Honorable Emil

---

[1] The charge of Possession of a Firearm Prohibited was severed for purposes of trial.

2

A. Giordano on June 14, 2017. In an Opinion dated July 26, 2017, Judge Giordano denied the Defendant's Motion to Suppress.

Attorney Karam filed a Motion to Withdraw as Counsel, as Mr. Karam also did not meet the Defendant's expectations. The Motion for withdrawal was granted by Judge Giordano, who then appointed Brian Monahan, Esq. as defense counsel. Mr. Monahan, has practiced primarily in the criminal defense field for his entire career. Mr. Monahan has previously served on the public defender's staff, became the chief public defender, and in recent years he has been on the Court's conflicts team. Mr. Monahan is a certified defense attorney for capital cases under Pa.R.Crim.P. 801, and is well respected. Shortly after Mr. Monahan's appointment, the Defendant requested that Mr. Monahan be discharged, filing a letter motion, in which the Defendant alleged that on Mr. Monahan's first visit to the prison, he disrespected by referring to the Defendant as "Blaze", an alleged street name of the Defendant. The Defendant also alleged that Mr. Monahan was otherwise challenging and intimidating to the Defendant.

The undersigned then assumed this assignment. We brought the Defendant and Mr. Monahan into the courtroom to hear the Defendant's request. We informed the Defendant that we were aware that he had now rejected each of his three court-appointed lawyers shortly after the appointments for his lack of trust in each one. We also noted that Mr. Monahan was the most experienced and respected defense attorney on our conflicts staff, and that we were reluctant to discharge Mr. Monahan.

During this exchange, the Defendant alleged that Mr. Monahan was disrespectful to him, calling him "Blaze" and physically menaced and intimated him, suggesting that Mr. Monahan wanted to physically fight the Defendant. Mr. Monahan indicated that the Defendant's version was

3

untrue.[2] Because Mr. Monahan indicated that he was willing to work with and represent this Defendant, we refused to discharge Mr. Monahan. We scheduled this matter for trial.

Trial commenced on September 5, 2017. This case against the Defendant resulted from three (3) controlled purchases of cocaine from the Defendant with the help of a confidential informant and a subsequent search of the Defendant's residence, during which various other drugs and drug paraphernalia were recovered.

Specifically, the testimony established that in June 2016, Vasa Faasuamalie, Task Force Officer with the Drug Enforcement Administration Agency and Sergeant at the Palmer Township Police Department, received information from a confidential source that the Defendant, also known as "Blaze", was trafficking cocaine in the area. Thereafter, Sgt. Faasuamalie, Special Agents of the Drug Enforcement Administration, officers of the Northampton County Drug Task Force, and the Palmer Township Police Department began to conduct surveillance on the Defendant to identify customers. In July 2016, the Palmer Township Police Department ("PTPD") conducted a traffic stop on Daniel Skodocek, based on their belief that Mr. Skodocek had just purchased drugs from the Defendant. A subsequent search revealed two (2) grams of cocaine and half an ounce of marijuana in Mr. Skodocek's possession. Mr. Skodocek met with Sgt. Faasuamalie and Brent Lear, a Detective at the Palmer Township Police Department and member of the Northampton County Drug Task Force. Skodocek agreed to work as a confidential

---

[2] As an aside, we found the Defendant's claims to be ridiculous. The Defendant is a rather young man, who is well over six feet, looks as if he weighs in the vicinity of 250 lbs., and claims to be an athlete. In fact, during his trial testimony, he bragged that he played semi-pro football and that he continues to lift weights and work out at the gym. At another time during the trial, he informed the jury that at the time of his arrest, he considered taking on the arresting police officer, DEA Agent Faasuamalie who is also a very large, athletic looking man. The Defendant inferred that he could have easy defeated Agent Faasuamalie in combat, had he opted to do so. On the other hand, Mr. Monahan, is approximately 60 years of age, perhaps 5'6", and likely weighs 150 lbs. or less. Mr. Monahan has a reputation for being a quiet, respectful gentleman, one who rarely – if ever – exhibits frustration with others, let alone loses his temper. The idea that Mr. Monahan would confront this young, large, angry man is frankly laughable.

4

informant. In return for his cooperation, Skodocek was not criminally charged for the drugs in his possession. Thereafter, on three (3) separate occasions, Skodocek worked as a confidential informant and engaged in controlled purchases of cocaine from the Defendant.

On August 3, 2016, Skodocek contacted the Defendant via cell phone and arranged to buy two (2) grams of cocaine in exchange for two hundred dollars ($200.00) at K-Mart, located at 320 S. 25th Street, Easton, Pennsylvania. Prior to the controlled buy, Detective Lear and Sgt. Faasuamalie met with Skodocek at a predetermined location, searched Skodocek's vehicle and person to confirm the absence of any contraband, and provided him with pre-recorded U.S. currency. Detective Lear followed Skodocek to K-Mart and subsequently followed him into the store during which he maintained constant surveillance of Skodocek. Detective Lear observed the Defendant meet with Skodocek in the store. The Commonwealth also entered into evidence a surveillance video which appeared to show the Defendant and Skodocek meeting in K-Mart on August 3, 2016. (Commonwealth's Exh. No. 2.) Thereafter, Detective Lear met with Skodocek at a predetermined location, where Skodocek provided him with the cocaine that he purchased from the Defendant, which was contained in two (2) clear vials with red caps.[3]

On August 17, 2016, Skodocek contacted the Defendant via cell phone to conduct another controlled purchase of two (2) grams of cocaine in exchange for two hundred dollars ($200.00). Again, Detective Lear and Sgt. Faasuamalie met with Skodocek at a predetermined location, searched his person and vehicle to confirm the absence of contraband, and provided him with pre-recorded U.S. currency. Detective Lear followed Skodocek to the Palmer Town Center, located at South 25th Street in Easton, Pennsylvania. He observed the Defendant walk from his residence,

---

[3] The Defendant represented to Mr. Skodocek that he was selling him two (2) grams of cocaine. However, lab tests confirmed that, in fact, the Defendant sold 1.0255 grams of cocaine to the confidential informant on August 3, 2016. (Commonwealth's Exh. No. 1.)

located at 914 S. 25th Street, Easton, Pennsylvania, walk across the street, and enter Skodocek's vehicle. Skodocek then drove around and the Defendant exited the vehicle in the area of Dearborn Street and S. 25th Street. Thereafter, Detective Lear met with Skodocek at a predetermined location, where Skodocek provided him with the cocaine that he purchased from the Defendant, which was contained in two (2) clear vials with red caps.[4]

On August 31, 2016, Skodocek contacted the Defendant via cell phone to conduct a third controlled purchase of two (2) grams of cocaine in exchange for two hundred dollars ($200.00). Again, Detective Lear and Sgt. Faasuamalie met with Skodocek at a predetermined location, searched his person and vehicle to confirm the absence of contraband, and provided him with pre-recorded U.S. currency. Skodocek drove to K-Mart, located at 320 S. 25th Street, Easton, Pennsylvania, where Detective Lear observed Skodocek and Defendant enter the store. Detective Lear subsequently entered the store and observed Skodocek and Defendant exiting the bathroom together. The Commonwealth introduced into evidence video camera surveillance footage which appeared to show the Defendant and Skodocek entering and exiting the bathroom together. (Commonwealth's Exh. No. 3.) Thereafter, Detective Lear met with Skodocek at a predetermined location, where Skodocek provided the cocaine that he purchased from the Defendant, which was contained in two (2) clear vials with red caps.[5]

Following the three (3) controlled purchases, Sgt. Faasuamalie and other law enforcement officers continued to maintain surveillance on the Defendant. On November 4, 2016, Sgt. Faasuamalie, members of the DEA, Palmer Township Police Department, and the Drug Task Force were conducting surveillance on the Defendant at his residence, 914 S. 25th Street, Easton,

---

[4] Lab results confirmed that the Defendant sold the informant .9198 grams of cocaine on August 17, 2016. (Commonwealth's Exhibit No. 5.)

[5] Lab results confirmed that the Defendant sold the informant .9941 grams of cocaine on August 31, 2016. (Commonwealth's Exh. No. 6.)

6

Pennsylvania. Officers observed the Defendant exit his apartment where he began loading items into the trunk of his Ford Thunderbird. Sgt. Faasuamalie (along with other officers from the task force) approached the Defendant while the Defendant was standing outside of his vehicle, announced his title, and asked the Defendant if he would speak with him. DEA Agent Joseph Labenburg was surveilling the Defendant from across the street. As Sgt. Faasuamalie approached the Defendant, Agent Labenburg observed the Defendant toss a black item toward a portico attached to the apartment building (a semi-enclosed porch area which leads to the entrance of the Defendant's apartment building).

The Defendant refused to cooperate with Sgt. Faasuamalie at which point he was detained and transported to the Palmer Township Police Department. Detective Lear conducted a search of the Defendant which revealed approximately two hundred dollars ($200.00), three (3) clear vials with red caps containing suspected cocaine, and four (4) clear vials with green caps also containing suspected cocaine. (Commonwealth's Exh. No. 7.)

Agent Labenburg remained on the scene at the Defendant's apartment while Sgt. Faasuamalie obtained a search warrant to search the Defendant's apartment, 914 S. 25th Street, Apartment C, Easton, Pennsylvania, and rental garages, located at 926 Miller Street, #G-18 and #G-19, Easton, Pennsylvania. A K-9 dog was also brought to the scene where the dog "hit" (indicated the presence of drugs) on the enclosed porch area.

Sgt. Faasuamalie prepared an Affidavit in Support of an application for a search warrant, which was signed by Magisterial District Judge Jacqueline M. Taschner on November 4, 2016. A search of Defendant's apartment, rental garages, and the enclosed front porch area was conducted at approximately 12:04 p.m. on November 4, 2016. Officers recovered the black item located in the enclosed porch area which turned out to be a black, military-style jacket with hidden

7

compartments. (Commonwealth Exh. No. 4.) Various items were hidden inside the jacket, including: vials recovered from within the jacket's sleeves (Commonwealth Exh. No. 8), 66.36 grams of marijuana (Commonwealth Exh. Nos. 9, 13), 61 Xanex pills (Commonwealth Exh. No. 14), 215 Oxycodone pills (Commonwealth Exh. No. 15), 47.44 grams of MDMA (Commonwealth Exh. No.17), and 51.2263 grams of cocaine (Commonwealth Exh. Nos. 8, 11, 12, 16).

Also recovered within the jacket were various items, including plastic baggies, "cutting" materials (substances combined with the pure form of a drug to yield a larger amount), and a digital scale. (See Commonwealth Exh. Nos. 8–22, generally.) Agent Labenburg testified that nothing of evidentiary value was discovered within the Defendant's apartment. However, a video security system was discovered at the Defendant's residence, although Sgt. Faasuamalie was unable to determine whether it was enabled to record video.

At trial, Detective Sergeant Michael Misch of the Bethlehem Police Department's Special Operations–Narcotics Unit provided expert testimony that the items recovered from the black jacket are indicative of drug trafficking. Specifically, Detective Misch testified that the paraphernalia and variety of drugs (stimulants, depressants, and hallucinogens) are indicative of drug trafficking as opposed to drug use, as most drug users prefer one type of drug. The volume of cocaine, numerous empty vials, spoon, scale, and individually packaged cocaine and marijuana further supported Detective Misch's conclusion. Further, the Defendant's practice of packaging cocaine and selling it in clear vials with red and green caps was another indication of drug trafficking as Detective Misch testified that sellers frequently use one type of packaging to distinguish their drugs from that of another seller.

Jody Thompson, a long-time friend of the Defendant with whom he worked on cars, also testified. Mr. Thompson's testimony revealed that he purchased clear vials and red caps, along

8

with Inositol powder,[6] at the Defendant's request and provided them to the Defendant. He also indicated that he had never seen the Defendant use drugs and that the Defendant worked out "religiously." Mr. Thompson's testimony was otherwise irrelevant.

The defense theory consisted of the cross-examination of the Commonwealth's witnesses and the Defendant's testimony. The Defendant testified extensively about his history involving the repair and customization of vehicles and introduced dozens of pictures of vehicles that he had been repairing prior to his arrest. He stated that he worked with Mr. Thompson at a shop on Goepp Street in Bethlehem from July to November of 2016. He stated that he previously owned his own car shop, "Redline 78", located on Island Park Road, Easton, Pennsylvania.

The only relevant testimony of Defendant included his admission that Skodocek called him on August 3, August 17, and August 31, 2016, although he stated that on each occasion Mr. Skodocek called him with a question about his car. The Defendant recounted the events of November 4, 2016 and denied that any contraband was recovered from his person following the search at the Palmer Township Police Department. On cross-examination, the Defendant admitted that he asked Mr. Thompson to purchase the vials for him, but stated that his intended use was to package and sell oils to fellow gym members.

During this trial, the Defendant was given much leeway with regard to his defense. The Defendant opted to testify and spent the bulk of his time on the witness stand discussing his love for automobiles, displaying photographs of various automobiles that he restored, including before and after pictures, as well as pictures charting the progress of his automobile restoration projects. He also presented pictures of his ex-girlfriend and pictures of himself. At various points, he described in detail articles of clothing, his array of tools, and even his own body image. (On several

---

[6] DEA Agent Robertjohn Wohlbach testified that the Inositol powder was discovered at the Defendant's residence and is commonly used as a "cutting" agent for cocaine.

9

occasions, Defendant referred to photographs taken of himself as depicting the Defendant as being a bit overweight, but noted that since those pictures he has lost weight). He also discussed his athletic prowess.

However, the Defendant proffered little way of defense to the Commonwealth's allegations. His defense was limited to his assertion that the police and confidential informant were lying. Other than his bald claims of fabrication, the Defendant presented no alternative theory for the presence of drugs on his person, or the large cache of drugs in his coat that was seized by law enforcement after they observed the Defendant take the jacket from his car and then toss it on to his porch immediately before his arrest. The jury obviously rejected the Defendant's assertions, and apparently found the Commonwealth's witnesses credible as the jury quickly convicted him of all charges on September 8, 2017. Sentencing was deferred so that a Pre-Sentence Investigation Report could be prepared for the undersigned's review. On September 22, 2017, the Defendant appeared for Sentencing. We sentenced the Defendant to an aggregate term of 132 months (11 years) to 264 months (22 years).

On Docket No. 4301-2016, the Defendant received a six (6) to twelve (12) month sentence on each count of Possession of a Controlled Substance; twelve (12) to twenty-four (24) months on each count of Possession of a Controlled Substance with Intent to Deliver; and twelve (12) to twenty-four (24) months on each count of Criminal Use of a Communication Facility.

On Docket No. 169-2017, we sentenced the Defendant to the following: sixty (60) to one hundred and twenty (120) months on the count of Possession of a Controlled Substance with Intent to Deliver 52.7713 grams of cocaine;[7] twenty-seven (27) to thirty-three (33) months on the count

---

[7] The total weight of cocaine charged represents 1.5454 grams discovered on the Defendant's person following a pat down search at the Palmer Township Police Department and 51.2263 grams recovered from within the black jacket recovered from the enclosed porch area in front of the Defendant's apartment.

10

of Possession of a Controlled Substance with Intent to Deliver 47.44 grams of MDMA; seventy-two (72) to one hundred and forty-four (144) months on the count of Possession of a Controlled Substance with Intent to Deliver 215 Oxycodone pills; twelve (12) to eighteen (18) months on the count of Possession of a Controlled Substance with Intent to Deliver 61 Xanex pills; and six (6) to sixteen (16) months on the count of Possession of a Controlled Substance with Intent to Deliver 66.36 grams of marijuana. On the five (5) counts of Possession of a Controlled Substance, Defendant received a six (6) to twelve (12) month sentence on each count. Finally, Defendant received a probationary sentence on the charge of Possession of Drug Paraphernalia.

All of the sentences were run concurrent to each other, with the exception of the two (2) counts related to Possession of a Controlled Substance with Intent to Deliver–Cocaine and Possession of a Controlled Substance with Intent to Deliver–Oxycodone, which were run consecutive to each other and to all other counts. Based on the Defendant's prior record score of five (5), the sentence for each charge was in the bottom end of the standard range.

Defendant filed the instant *pro se* Post Sentence Motion in Arrest of Judgment on September 27, 2017, which also alleged, *inter alia*, ineffective assistance of counsel. As the Defendant was alleging ineffective assistance of counsel, we appointed Chad M. DiFelice, Esq. on October 20, 2017 to represent the Defendant for post-sentencing proceedings and appeals. Mr. Sinanan continued to author letters and Motions indicating that he was not satisfied with Attorney DiFelice and that he wished to represent himself.[8] Eventually, we held a "Grazier" hearing on December 18, 2017 to conduct a colloquy of the Defendant and ensure that his waiver of counsel at the post-conviction and appellate stage is knowing, intelligent, and voluntary. See Com. v. Grazier, 713 A.2d 81, 82 (Pa. 1998). After a video hearing, we granted the Defendant's request to

---

[8] On or about November 17, 2017, the Defendant filed a letter/motion entitled "Express Waiver of Counsel to Pro-Se [sic]" in which the Defendant indicated that he "waive[s] all rights to appointed counsel to proceed Pro-Se."

represent himself. Frankly, it made sense as a review of the file indicates that the Defendant wishes to solely control his defense and pursue his unique legal theories. Further, the Defendant expressed his confidence in his ability to best present his legal theories on appeal.

Since his trial, the Defendant has filed the following *pro se*, post-sentence motions:

1. The first post-sentence motion filed on September 27, 2017 and dated September 22, 2017, is entitled "Post-Sentence Motion and Arrest of Judgment." This Motion includes assertions that the warrantless arrest and the subsequent search of the Defendant's property was unlawful. The motion also complained about Judge Giordano's Suppression Order. The Motion further referenced trial testimony of the police and Skodocek, alleging that the testimony was untruthful and not credible.

2. The second post-sentence motion, filed on October 6, 2017 and dated October 5, 2017, is in the nature of a private criminal complaint against trial counsel, Brian Monahan, alleging that Attorney Monahan stole clothing belonging to the Defendant.

3. The next post-sentence filing was filed on October 24, 2017 and dated October 19, 2017, alleging misfeasance by the Honorable Emil Giordano related to "records to the omnibos [sic] motions, due to non-feasance, of ineffective assistance of counsel by Attorney Alexander J. Karam, Jr. and Brian Monahan."

4. The fourth post-sentence motion was filed on November 17, 2017 and dated November 13, 2017, entitled "Express Waiver of all Rights to Appointed Counsel to Proceed Pro-se".

5. The fifth post-sentence motion was filed December 1, 2017 and dated November 21, 2017, seeking to expand the record with case "Shaleem Shabezz."

6. The sixth post-sentence motion was filed on January 2, 2018 and dated December 20, 2017, alleging a "violation of 234 Rule 505(b)". This motion also alleges a Fourteenth Amendment violation regarding the gap between the commission of the offenses (the three controlled buys) and the arrest 68 days later. Additionally, the Defendant again complained about the quality of the evidence presented by the Commonwealth at trial.

7. On January 2, 2017, the Defendant filed a seventh Post-Sentence Motion dated December 22, 2017, complaining about the probable cause supporting the issuance of a search warrant, including the information provided by the confidential informant.

8. Also, on January 2, 2018, the Defendant filed an eighth post-sentence motion dated December 24, 2017, alleging "a violation of 18 Pa.C.S.A. Section 313 Entrapment."

9. On January 5, 2018, the Defendant filed his ninth Supplement Post-Sentence Motion dated December 26, 2017, raising alleged "Inconsistent conflicting material evidence...".

12

10. On January 5, 2018, Defendant filed a Supplemental Post-Sentence Motion dated December 28, 2017, rehashing prior complaints about alleged inconsistencies with testimony and police reports.

11. On January 18, 2018, Defendant filed his eleventh post-sentence motion, dated January 5, 2018, entitled "Missing filed correspondence and demand for acknowledgement of 'both' applications for order mandating the Clerk of Courts and/or Court Stenographer, to furnish court records and transcribe Notes of Testimony in forma pauperis..."

12. The Defendant's last Post-Sentence Motion was filed on January 22, 2018, dated January 12, 2018, purporting to be his conclusory statement regarding his Post-Sentence Motions.

We interpreted Defendant's final filing to mean that he no longer intends to file additional post-sentence motions. Therefore, we feel comfortable entering this final Order disposing of all of his post-sentence motions.

## Discussion

The Defendant in this matter filed an initial twenty-one (21) page *pro se* Post Sentence Motion in Arrest of Judgment, along with the above-referenced supplemental filings. We have attempted to distill the purported issues advanced by the Defendant, most of which appear to relate to pre-trial issues, and will address each in turn.

I. **Lack of Probable Cause to Justify the Warrantless Arrest and Affidavit in Support of the Search Warrant Executed at 914 S. 25th Street, Easton, Pennsylvania on November 4, 2016.**

The main argument advanced by the Defendant appears to be his belief that his warrantless arrest was unconstitutional and therefore, the evidence seized pursuant to the search warrant issued following his arrest must be suppressed as fruit of the poisonous tree.

As an initial matter, the Defendant raised these suppression issues in an Omnibus Pretrial Motion filed on May 17, 2017. A suppression hearing was held before the Honorable Emil A. Giordano on June 14, 2017. In an Opinion dated July 26, 2017, Judge Giordano denied the

13

Defendant's Motion to Suppress.[9] We rely on Judge Giordano's ruling as it pertains to Defendant's suppression motion and agree for the reasons below.

The Fourth Amendment to the U.S. Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures. Evidence obtained in violation of these constitutional protections may be subject to suppression based on the fruit of the poisonous tree doctrine. See Wong Sun v. U.S., 371 U.S. 471 (1963); Mapp v. Ohio, 367 U.S. 643 (1961); Weeks v. U.S., 232 U.S. 383, 390 (1914). However, a defendant must first establish that the initial search or seizure which produced the incriminating evidence was unconstitutional, which is not the case in the matter currently before the Court.

The Superior Court has repeatedly held the Defendant's theory that his warrantless arrest was unconstitutional is "an unqualified proposition of law, which is patently false." Com. v. Dozier, 99 A.3d 106, 112 (Pa. Super. 2014). In order to conduct an arrest in a public place without a warrant, law enforcement officers must have probable cause to believe that a felony has been committed and that the person to be arrested committed the offense. Id. (quoting Com. v. Clark, 735 A.2d 1248, 1251 (Pa. 1999)). See also Pa.R.Crim.P. 502 (enumerating the procedures by which a criminal proceeding may be instituted).[10] Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in

---

[9] Judge Giordano's Opinion also denied Defendant's Motion for Nominal Bail based on Defendant's assertion that he was not brought to trial within 180 days. See Pa.R.Crim.P. 600. We have had trouble ferreting out Defendant's claims in the instant Motion, but in the event that Defendant later asserts a Rule 600 violation, we rely on Judge Giordano's calculations in his July 26, 2017 Opinion. We also note that the Defendant was brought to trial within 365 days in both cases and therefore, Defendant would not have been entitled to dismissal of the charges.

[10] "Criminal proceedings in court cases shall be instituted by: (2) an arrest without a warrant: (a) when the offense is a murder, felony, or misdemeanor committed in the presence of the police officer making the arrest; or (b) upon probable cause when the offense is a felony or murder; or (c) upon probable cause when the offense is a misdemeanor not committed in the presence of the police officer making the arrest, when such arrest without a warrant is specifically authorized by statute." Pa. R. Crim. P. 502.

14

the belief that an offense has been committed by the person to be arrested. Com. v. Dommel, 885 A.2d 998, 1002 (Pa. Super. 2005) (internal citations omitted). See also Com. v. Levesque, 364 A.2d 932, 937 (Pa. 1976). To determine whether probable cause existed to justify a warrantless arrest, the reviewing court will assess the totality of the circumstances. Dommel, 885 A.2d at 1002.

When an arrest is made without a warrant, the burden is on the Commonwealth to establish with reasonable specificity the facts sufficient to establish the existence of probable cause. Com. v. Rutigliano, 456 A.2d 654, 656–57 (Pa. Super. 1983) (internal citations omitted). "The crucial test in determining the presence of probable cause is whether the facts and circumstances known to the police or about which they have reasonably trustworthy information at the time of the arrest would warrant a person of reasonable caution in believing the suspect has committed or is committing a crime." Id. See also Com. v. Stokes, 389 A.2d 74, 76 (Pa. 1978).

Here, the record and testimony at trial established that the Defendant was suspected of trafficking in cocaine. As a result, law enforcement officers initiated an investigation, began surveillance on the Defendant, and ultimately conducted three (3) controlled purchases from the Defendant on August 3, 2016, August 17, 2016, and August 31, 2016. Testimony from Detective Lear at trial established that, on each occasion, the Defendant was contacted by an Skodocek to purchase two (2) grams of cocaine in exchange for two hundred dollars ($200.00). Each controlled purchase occurred under the surveillance of law enforcement officers and on each occasion, the Defendant did in fact sell cocaine to the Skodocek. As a result, Sgt. Faasuamalie detained the Defendant outside of his residence on November 4, 2016 based on the information and evidence collected from the controlled buys. Accordingly, the Defendant was charged at Docket No. 4301-2016 with three (3) counts of Possession of Controlled Substance with Intent to Deliver; three (3)

15

counts of Possession of a Controlled Substance; and three (3) counts of Criminal Use of a Communication Facility.

Detective Faasuamalie's testimony established that he personally participated in and supervised the three (3) controlled buys which provided the factual basis for the charges at Docket No. 4301-2016. Therefore, "the facts and circumstances known to the [arresting officer] ... at the time of the arrest" were sufficient to support Detective Faasuamalie's belief that the Defendant had committed a felony offense. See Levesque, 364 A.2d at 937. In sum, the record and testimony established at trial clearly establish that probable cause existed to support the Defendant's warrantless arrest.

The Defendant also advances the argument that the search warrant was not supported by probable cause and therefore, the evidence recovered from the black jacket which provided the basis for the charges at Docket No. 169-2017 should be suppressed.[11] As stated above, Judge Giordano rejected this argument following a suppression hearing and found that "based on the totality of the circumstances and the information contained within the four corners of the search warrant", there was ample probable cause to issue the warrant. (See Opinion, J. Giordano, dated 7/26/17.) Accordingly, the Defendant's Motion to Suppress was denied.

Generally, the duty of a court reviewing the sufficiency of an Affidavit for Probable Cause in support of a search warrant is to simply ensure that the magistrate had a substantial basis for concluding that probable cause existed. Com. v. Shickler, 679 A.2d 1291, 1292 (Pa. Super. 1996) (internal citation omitted). Probable cause exists when "the facts and circumstances set forth in the affidavit are sufficient to warrant a man of reasonable caution in the belief that contraband to be seized is in the specific place covered in the application." Com. v. Stamps, 393 A.2d 1035, 1037–

---

[11] The Defendant was charged with five (5) counts of Possession of Controlled Substance with Intent to Deliver; five (5) counts of Possession of a Controlled Substance; and one (1) count of Possession of Drug Paraphernalia.

16

38 (Pa. Super. 1978), aff'd, 427 A.2d 141 (Pa. 1981) (internal citations omitted). The magistrate's duty is to review an affidavit in a commonsense and realistic manner to determine whether the probable cause standard has been met. Id.

Defendant's main complaint with the Affidavit is his argument that the Affidavit was based upon "stale" information as the warrant was executed approximately sixty-five (65) days after the third controlled purchase. It is true that probable cause must exist at the time the magistrate issues the warrant. As such, an affidavit must contain facts and circumstances that warrant the magistrate to believe that contraband is located in the area to be searched at the time that the warrant is to be executed. For this reason, "[i]f the issuing officer is presented with evidence of criminal activity at some prior time, this will not support a finding of probable cause as of the date the warrant issues, *unless* it is also shown that the criminal activity continued up to or about that time." Com. v. Shaw, 281 A.2d 897, 899 (Pa. 1971) (internal citations omitted) (emphasis added).

Here, the Affidavit of Probable Cause in support of the search warrant for Defendant's residence, located at 914 S. 25th Street, Easton, Pennsylvania, clearly meets this burden. As stated by Judge Giordano in his Opinion denying the Defendant's Motion to Suppress:

> Here, the information contained in the warrant establishes that the Defendant was involved in the trafficking of cocaine and three controlled buys were made directly from the Defendant. On all three occasions the Defendant either left or returned to his residence located at 914 South 25th Street. On two occasions he drove to the meeting location and on one occasion he walked. It also contained the information that the Defendant was taken into custody on the same day for the controlled buys and **a search incident to arrest revealed seven vials of cocaine on his person, indicating that he was involved with cocaine on the date the warrant was issued.** [Emphasis added].

> Therefore, based on the totality of the circumstances and the information contained within the four corners of the search warrant, we believe there was ample probable cause to issue a search warrant and, therefore, **DENY** Defendant's Motion to Suppress the Evidence Obtained Therefrom.

17

We concur and also emphasize that the pat down search of the Defendant at the Palmer Township Police Department revealed seven (7) concealed vials containing suspected cocaine—three (3) of which were clear with red caps—the same type of vials which the Defendant sold to the confidential informant during the controlled buys. These facts contained within the Affidavit provided the magistrate with ample information to determine that the Defendant's criminal conduct (trafficking in cocaine) was ongoing. Further, the vials were discovered pursuant to a constitutionally permissible search following the valid arrest of the Defendant. As such, Defendant's argument is without merit that the vials constituted fruit of the poisonous tree and should not have been considered by the magistrate in evaluating the existence of probable cause to support the search of Defendant's residence.

Defendant also argues that the magistrate was not warranted in finding that probable cause existed because law enforcement officers never made direct contact with the Defendant during the controlled buys, nor did they stop the Defendant following each controlled buy to establish that he was, in fact, in possession of the pre-recorded U.S. currency supplied to the informant to purchase the cocaine. Defendant also complains that no video has been produced showing the search which recovered vials of cocaine on November 4, 2016. Clearly, Defendant misunderstands the applicable standard:

> The probable cause standard concerns only the probabilities, and not a prima facie showing of criminal activities, and probable cause exists when the facts and circumstances set forth in the affidavit are sufficient to warrant a man of reasonable caution in the belief that contraband to be seized is in the specific place covered in the application.

Stamps, 393 A.2d at 1037–38.

The probable cause standard does not demand incontrovertible proof that the Defendant committed the acts alleged. As such, the three (3) controlled buys, detailed above, along with the

18

vials recovered from the Defendant's person are more than sufficient to establish that it was likely that cocaine would be found in the Defendant's residence on the date that the search warrant was executed.

We also note that Defendant filed a supplemental "Motion to Expand the Record with Case 'Saleem Shabezz'" on or about December 1, 2017. Notwithstanding Defendant's failure to assert its relevance, we reviewed same and find that the holding in Shabezz provides no support for Defendant's arguments. In Com. v. Shabezz, 166 A.3d 278 (Pa. 2017), the Supreme Court addressed the issue regarding whether the illegal seizure of an automobile requires a passenger to establish a reasonable expectation of privacy in the area in which contraband was recovered in order to invoke Fourth Amendment protections, or whether the evidence is barred outright as fruit of the poisonous tree. Id. at 280. The Court explained that a defendant is required to establish a reasonable expectation of privacy prior to obtaining relief following an unconstitutional search, *not* an illegal seizure. Id. at 287–89. Applying the fruit of the poisonous tree doctrine, evidence must be suppressed, if, "granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. U.S., 371 U.S. 471, 488 (1963). Because the "primary illegality" is the unconstitutional seizure, not subsequent search of the car, a defendant need only establish the illegality of the seizure and "nothing more." Shabezz, 166 A.3d at 289.

Thus, the Court held that the illegal seizure of an automobile automatically requires suppression of the evidence obtained therefrom, unless the taint of the initial illegality is removed, without further requiring a passenger to establish a privacy interest. Id. at 287. While the Shabezz case reaffirms an established principle of Fourth Amendment jurisprudence—that evidence

19

obtained in violation of an individual's Fourth Amendment rights is subject to suppression—it provides no support for Defendant's case. As discussed above, Defendant's warrantless arrest was not unconstitutional. Accordingly, evidence obtained following his arrest is not subject to suppression.

In short, Defendant's arguments in his Post Sentence Motion and supplemental motions based upon alleged constitutional violations resulting from his arrest and the issuance of the subsequent search warrant are without merit.

## II. Sufficiency and Weight of the Evidence

The Defendant argues that he is entitled to an arrest of judgment because the evidence is insufficient for the trier of fact to have found a verdict of guilty.

In evaluating a challenge to the sufficiency of the evidence, we are to view all of the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner, along with any reasonable inferences to be drawn therefrom. See Commonwealth v. Brown, 52 A.3d 320, 323 (Pa. Super. 2012). We must then determine whether the evidence was sufficient to have permitted the trier of fact to find that each and every element of the crimes charged was established beyond a reasonable doubt. See Commonwealth v. Nicotra, 625 A.2d 1259, 1261 (Pa. Super. 1993). The facts and circumstances presented at trial need not preclude every possibility of innocence. Id. "Both direct and circumstantial evidence can be considered equally when assessing the sufficiency of the evidence." Commonwealth v. Price, 616 A.2d 681, 683 (Pa. Super. 1992). Further, "the entire record must be evaluated and all evidence actually received must be considered." Brown, 52 A.2d at 323.

In Widmer, 744 A.2d 745 (Pa. 2000), the Supreme Court explained that a claim challenging the sufficiency of the evidence to support a verdict is a question of law and evidence will be

20

deemed sufficient to support a verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. Id. at 751. In contrast, an attack on the weight of the evidence requires the court to exercise its discretion upon review of the record. Id. It requires more than a mere conflict in the evidence or that the court may have reached a different conclusion. Id. at 752. When reviewing the weight of the evidence, the standard to determine whether the verdict is against the weight of the evidence requires a finding that certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. Id. Finally, we note that the Widmer court held that the distinction between these two challenges is critical, because:

> ... [a] claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); Commonwealth v. Vogel, 501 Pa. 314, 461 A.2d 604 (1983), whereas a claim challenging the weight of the evidence if granted would permit a second trial. Id.

Id. at 751.

Applying these principles, we now review the jury's verdict. In order for the Defendant to be found guilty of Possession with Intent to Deliver Cocaine (related to Docket No. 4301-2016), the following must be proven beyond a reasonable doubt:

> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 § 780-113 §§A30.

21

Regarding the three (3) controlled purchases charged in Docket No. 4301-2016, the jury's verdict was well supported by the evidence. First, Trent Caswell, Forensic Chemist with the Drug Enforcement Administration, testified to lab results confirming that the substance contained within the vials purchased by the informant on August 3, August 17, and August 31, 2016 was, in fact, cocaine.

Additionally, there was ample direct and circumstantial evidence that the Defendant possessed a controlled substance, which he knew to be cocaine, and delivered it to the informant. The testimony of the informant, Daniel Skodocek, along with the testimony of Detective Lear and Sgt. Faasuamalie, established that the Defendant possessed the cocaine which he delivered to the informant. Detective Lear searched the informant prior to each controlled buy, confirming the absence of any contraband, and Mr. Skodocek's testimony established that on each occasion he contacted the Defendant to purchase cocaine and that he did, in fact, purchase cocaine directly from the Defendant.[12] Accordingly, the evidence proffered at trial was sufficient to support the jury's guilty verdict on the three (3) counts of Possession of a Controlled Substance with Intent to Deliver in Docket No. 4301-2016.

Additionally, the evidence established to support the Possession of a Controlled Substance with Intent to Deliver necessarily supports the jury's verdict as to Possession of a Controlled Substance, 35 § 780-113 §§A16 (charged in Docket No. 4301-2016), as this is a lesser-included offense. See Com. v. Edwards, 449 A.2d 38, 39 (Pa. Super. 1982) (noting that "possession with

---

[12] The jury was given instructions on a "Corrupt or Polluted Source", advising that they need not find Mr. Skodocek credible based on his cooperation with police in exchange for favorable treatment. Notwithstanding that Mr. Skodocek's testimony was bolstered by other evidence introduced at trial, decisions regarding issues of credibility are within the jury's function as the fact-finder. See Com. v. Cannon, 563 A.2d 918, 924 (Pa. Super. 1989). Thus, it was within the jury's discretion whether to rely on Mr. Skodocek's testimony in order to find the Defendant guilty on the counts related to the controlled purchases.

22

the intent to deliver clearly includes possession [and] are therefore merged for sentencing purposes.").

In order for the Defendant to be convicted of Criminal Use of a Communication Facility (related to Docket No. 4301-2016), the following must be proven beyond a reasonable doubt:

> (a) A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64) known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 § 7512 §§ A.

Here, the testimony at trial established that the informant contacted the Defendant via cell phone to arrange three (3) controlled purchases of cocaine. Thus, the jury had sufficient evidence by which to convict the Defendant of using a communication facility to commit an offense enumerated under the Controlled Substance Act.

The jury's verdict as to the offenses charged in Docket No. 169-2017 were also well supported by the direct and circumstantial evidence submitted at trial.

In order for the Defendant to be found guilty of Possession of a Controlled Substance with Intent to Deliver (related to Docket No. 169-2017), the following must be proven beyond a reasonable doubt:

> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 § 780-113 §§A30.

Here, expert drug testimony from Trent Caswell established that the substances recovered from inside the black jacket on November 4, 2016 were controlled substances, specifically: 66.36 grams

23

of marijuana, 61 Xanex pills, 215 Oxycodone pills, 47.44 grams of MDMA, and 51.2263 grams of cocaine.[13] Further, the testimony from Detective Misch, who was received by this Court as an expert in drug trafficking, supported the finding that the drugs were possessed with the intent to deliver. Specifically, Detective Misch opined that the variety and quantity of drugs indicated trafficking as opposed to personal use. The drug paraphernalia (scale, baggies, vials) located in the jacket further supported Detective Misch's opinion that the controlled substances were possessed to the intent to deliver.

The testimony at trial also supported the jury's finding that the Defendant possessed the black jacket. In his Motion, the Defendant appears to raise the argument that the Commonwealth failed to establish the possession element of this offense (although not succinctly stated as such). Agent Labenburg testified that he was surveilling the Defendant on November 4, 2016 from a distance, on a side street parallel to the Defendant's residence on S. 25th Street, while Sgt. Faasuamalie, along with other officers, approached the Defendant. Agent Labenburg testified that he observed the Defendant toss a black item into the enclosed porch area in front of the Defendant's apartment as the officers approached the Defendant. Evidence established that the enclosed porch area was under constant surveillance while Sgt. Faasuamalie obtained a search warrant. Pursuant to that search warrant, the black jacket was searched and the above-referenced controlled substances were recovered from within.

Defendant argues that Agent Labenburg has provided inconsistent testimony regarding his ability to observe the Defendant on November 4, 2016. Defendant asserts that Agent Labenburg at one point testified that he observed the Defendant using his "natural eye", while on another

---

[13] At Docket No. 169-2017, the Defendant was charged with possession with intent to deliver 52.7713 grams of cocaine, 1.5454 grams of which were recovered from the Defendant's person following a pat down search at the Palmer Township Police Department on November 4, 2016.

occasion testifying that he used binoculars. Regardless, a jury is entitled to find a witness's testimony credible notwithstanding minor inconsistencies. Thus, the jury was entitled to find that the Defendant possessed the black jacket from which drugs were ultimately recovered based upon Agent Labenburg's testimony that he observed the Defendant toss a black item into the portico area coupled with his testimony that the area was under constant surveillance (precluding any disturbance of evidence located within the area).

Once the jury had sufficient evidence to convict the Defendant on the five (5) counts of Possession of a Controlled Substance with Intent to Deliver, the evidence also supported the guilty verdicts as to the five (5) counts of Possession of a Controlled Substance, 35 § 780-113 §§A16. See Edwards, 449 A.2d at 39.

Finally, in order to find the Defendant guilty of Unlawful Possession of Drug Paraphernalia, the following elements must be proven beyond a reasonable doubt:

> (32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113 §§A32.

Here, there was ample testimony from several of the officers involved, including Detective Misch and Sgt. Faasuamalie, that permitted the jury to find that the contents of the black jacket recovered on November 4, 2016 contained drug paraphernalia (containing, *inter alia*, plastic vials, small glassine baggies, and a scale). For example, testimony established that the small baggies and plastic vials are routinely used to package and contain a controlled substance. Further, the evidence was sufficient to establish that the Defendant possessed the jacket which contained the drug paraphernalia, as explained above. Thus, the jury's verdict as to Possession of Drug Paraphernalia

25

was supported by the evidence that the Defendant contained the above-referenced items for the purpose of packaging or containing controlled substances.

The jury in this case was instructed to deliberate and find each and every element of the crimes charged by proof beyond a reasonable doubt. We find that the jury's verdict of guilty on all counts was well supported by the evidence.

### III. Ineffective Assistance of Counsel

Defendant's Motion also asserts a vague claim relating to alleged ineffective assistance of counsel:

> Due to the fact of ineffective assistance of counsel the issues that were raised by me (Sinanan) before and during trial have not been addressed. There are numerous correspondence filed with no response from counsel, representation has been flawed. (Emphasis in original).

The Supplemental Motion filed by the Defendant on or about October 27, 2017 also asserts "ineffective assistance of counsel by Attorney Alexander J. Karam Jr. and Brian M. Monahan."

When evaluating ineffectiveness of counsel claims, the Court employs a three-pronged test:

> The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. If we determine that there was no reasonable basis for counsel's chosen course then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice.

Com. v. Edwards, 762 A.2d 382, 390 (Pa. Super. 2000) (quoting Com. v. Rovinski, 704 A.2d 1068, 1071 (Pa.Super.1997)). Further, the law presumes that counsel has rendered effective assistance and thus, the burden rests on the Defendant to establish ineffectiveness. Com. v. Smith, 167 A.3d 782, 787 (Pa. Super. 2017).

26

Here, the Defendant's Motion has not identified any "issue/argument/tactic" that any of his former three (3) defense attorneys failed to pursue in order to form the basis of an ineffective assistance of counsel claim. See Edwards, 762 A.2d at 390. The Defendant has failed to meet his burden of asserting any specific act or omission by his various defense counsel and therefore has failed to meet his burden. Accordingly, we find that the Defendant has asserted no cognizable claim for ineffective assistance of counsel. Moreover, this issue is more properly addressed on collateral attack.

For the reasons set forth above, Defendant's Post Sentence Motion, with all its supplemental motions, is **DENIED**.

BY THE COURT:

STEPHEN G. BARATTA, P.J.

27

UJA

# IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | ) | No. 4301-2016 |
| | ) | 169-2017 |
| **v.** | ) | |
| | ) | |
| **ALLAN LESLIE SINANAN** | ) | |
| | ) | |
| **Defendant** | ) | |

FILED 2018 MAR 29 AM 9:37 CLERK OF COMMON PLEAS CRIMINAL DIVISION NORTHAMPTON COUNTY, PA

## PENNSYLVANIA RULE OF
## APPELLATE PROCEDURE 1925(a) STATEMENT

On or about February 15, 2018, the Appellant filed a Notice of Appeal to the Superior Court from our Order dated January 29, 2018 in which we denied Defendant's Post-Sentence Motion along with its supplementation. On February 21, 2018, we filed our request for a 1925(b) Statement. We received the Defendant's Concise Statement of Matters complained of on Appeal, which was docketed on March 13, 2018. As such, the Defendant's filing is timely.

The Appellant has filed the following motions/ letters since our January 29, 2018 Order denying post-sentence relief:

1. "Judge's Chambers Advisement 234 Rule 720(B)(4)" (dated January 22, 2018)

2. "For A Impartial Judge" [sic] (dated January 26, 2018)

3. "Motion to Stay Proceedings for Forfeiture Hearing Date 2-21-2018" (dated January 26, 2018)

4. "Motion for Obtaining the Notice of Appealability and Transcripts" [sic] (dated January 30, 2018)

5. "Ineffective Assistance of Counsel Brian M. Monahan" (dated January 31, 2018)

1



6. "Motion for Injunctive Relief" (dated February 2, 2018)

7. "Request for Notice of Appeal" (dated February 10, 2018)

8. "Procedures Appeal" (dated February 15, 2018)

9. "Motion to Preserve #3 Arguments" (dated February 19, 2018)

10. "Motion to Acknowledge – Motion to Preserve #3 Arguments" (dated February 23, 2018)

11. "Motion to Stay Proceeding – Forfeiture Hearing" (dated February 23, 2018)

12. "Additional Motion for Court Administrator" (dated February 27, 2018)

13. "Motion for Extension and Return Defendant to S.C.I. Albion" (dated February 28, 2018)

14. "Motion for Extension of Time" (dated February 28, 2018)

15. "Concise Statement of the Matters Complained on Appeal" (dated March 9, 2018)

16. "Nunc Pro Tunc Relief – Motion to Dismiss Charges" (dated March 20, 2018)

As best we can tell, we have fully addressed the cognizable claims raised within Defendant's 1925(b) Statement in our January 29, 2018 Order denying Defendant's Post-Sentence Motion (and all of its supplementation). The remainder of the "claims" in Defendant's 1925(b) Statement are either not cognizable, nonsensical, or overly vague and therefore waived. See Commonwealth v. Pukowsky, 147 A.3d 1229, 1236 (Pa. Super. 2016) (citing Lineberger v. Wyeth, 894 A.2d 141, 148 (Pa.Super.2006)). Additionally, Defendant appears to raise claims which he failed to properly preserve prior to, or during, trial (e.g., #16 "Mistrial – September 5, 2017 thru [sic] September 8, 2017"; #17 "Violation of Exculpatory Evidence").

2

Accordingly, we submit that other than incorporating the above-referenced Order dated January 29, 2018, there is no need to further justify our Order dismissing Defendant's Post-Sentence Motion and all of its supplementation.

March 28, 2018                                        **BY THE COURT:**

**STEPHEN G. BARATTA, P.J.**

3



# IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    )    No.   **4301-2016**
)                        **169-2017**
v.                          )
)
ALLAN LESLIE SINANAN          )
)
Defendant           )

### PENNSYLVANIA RULE OF
### APPELLATE PROCEDURE 1925(a) STATEMENT
### IN RESPONSE TO AMENDED 1925(b) STATEMENT FILED JUNE 1, 2018

The Appellant/Defendant was permitted to file an Amended 1925(b) Statement which he did so on June 1, 2018. We received a copy of the Amended 1925(b) Statement on June 6, 2018. Frankly we find it somewhat confusing and likely duplicative of other filings by the Defendant.

If we understand correctly, the Defendant suggests that the trial court erred in failing to suppress the contraband found on the Defendant's person resulting from the warrantless search incident to his arrest.

We note that the Honorable Emil Giordano addressed the suppression issues raised by Defendant in Defendant's omnibus pre-trial motion. Judge Giordano denied Defendant's suppression motion by his Order dated July 26, 2017.

Now comes the Defendant arguing that the search incident to his arrest was somehow unconstitutional but he provides no credible legal support which suggests that the search of the Defendant's person in which contraband was found was somehow constitutionally infirm.

1

It is Hornbook Law in Pennsylvania (as well as the rest of this country) that a search incident to an arrest is an exception to the warrant requirement. See *Commonwealth v. Simonson*, 148 A3d. 792 (Pa. Super 2016). In *Simonson,* the Superior Court held:

> The search incident to arrest exception allows "arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, (to) search both the person arrested and the area within his immediate control. *Id.* at 2175 (internal quotations omitted); **Chimel v. California**, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Moreover, in contrast to the exigent circumstances exception, the search incident to arrest exception applies categorically. In other words, the search incident to arrest exception permits a search of the arrestee's person as a matter of course – and without a "case-by-case adjudication...(of) whether a search of a particular arrestee is likely to protect officer safety or evidence." **Birchfield**, 136 S.Ct. at 2176 (internal quotations and emphasis omitted).

*Id* at 799.

We do not believe that any other discussion is necessary to address the Defendant's Amended 1925(b) Statement.

June 7, 2018                                BY THE COURT:

**STEPHEN G. BARATTA, P.J.**

2